UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LUIS ANGEL PEREZ,

                              Plaintiff,        Case No. 05 CV. 5749 (LBS)

-against-                                      **THIRD AMENDED**
                                                        **COMPLAINT**

NEW YORK PRESBYTERIAN HOSPITAL,

                              Defendant.
----------------------------------------------------------------X

       Plaintiff Luis Angel Perez (or "Perez"), by his attorneys, Ballon Stoll Bader & Nadler, P.C., complains of defendant New York Presbyterian Hospital (the "Hospital"), as follows:

## I. JURISDICTION and VENUE

       1.    This action is to remedy defendant's unlawful, discriminatory acts against plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, *et seq*.("Title VII"), including: defendant's unlawful harassment of plaintiff based on his race and national origin; defendant's discrimination against plaintiff and its creation of or its failure to put an end or attempt to put an end to a known hostile work environment based on his race and national origin; defendant's retaliation against and retaliatory discharge of plaintiff resulting from his engaging in protected activities.

       2.    This Court has jurisdiction over the within claims arising under 42 U.S.C. § 2000e, *et seq*.

       3.    Venue is proper in this District in that Hospital is a resident of the City, County and State of New York wherein the acts and practices complained of herein took place in substantial part.

## II. THE PARTIES

4. Plaintiff is a "person" within the meaning of 42 U.S.C. § 2000e (a).

5. Plaintiff is a Hispanic male.

6. At all times relevant hereto, plaintiff resided in Bronx County, New York.

7. Hospital is an "employer" within the meaning of 42 U.S.C. § 2000e (b).

8. At all relevant times hereinafter mentioned, Hospital was and still is located at 5141 Broadway, New York, New York 10034.

9. From on or about July 29, 2002, until on or about February 22, 2005, plaintiff was employed by Hospital.

10. During plaintiff's employment he complained to the Hospital about Hospital's unlawful discriminatory acts based upon race and national ancestry, and attempted to have Hospital address what plaintiff insisted were Hospital's unlawful discriminatory acts based upon race and national ancestry.

11. Plaintiff's aforesaid efforts were unsuccessful.

12. Plaintiff's lack of success led to his filing the charge with the EEOC, described below.

## III. PROCEDURAL POSTURE

13. On or about August 3, 2004, plaintiff timely filed a Charge of Discrimination denominated Charge No. 160-2004-03043 (the "Charge") with the New York District Office of the Equal Employment Opportunity Commission ("EEOC").

14. In the charge, plaintiff alleged, *inter alia*, that, in violation of Title VII, Hospital: engaged in unlawful discriminatory conduct against him because of his race

and national origin; despite actually knowing of what was occurring, failed to remedy harassing conduct and hostile work environment; implemented and perpetuated practices having disparate impact on Hispanic minorities at Hospital, including plaintiff; exercised a pattern and practice of discrimination against Hispanic minorities, including plaintiff, via Hospital procedures; reacted to plaintiff's lawful complaints and grievances regarding disparate treatment and discriminatory practices with retaliation consisting, by way of example, adverse employment measures against plaintiff such as sham disciplinary measures and termination of his employment.

15.  In January 2005, the EEOC terminated processing plaintiff's charge and issued him a Notice of Right to Sue Letter, a copy of which is annexed hereto as Exhibit A.

16.  Within ninety days after his receipt of the Right to Sue Letter, plaintiff, *pro se*, filed a Complaint with this court naming as defendant the President of the Hospital, Herbert Pardes.

17.  Thereafter, plaintiff, *pro se*, filed his First Amended Complaint, substituting Hospital as defendant in place of Pardes.

18.  On or about October 6, 2005, plaintiff, *pro se*, filed his Second Amended Complaint adding 1199 SEIU New York's Health and Human Service Union (the "Union") as a party defendant on all claims.

19.  This Court dismissed the claims against the Union.

20.  By order dated April 14, 2006, this court (Sand, D.J.) directed the case reopened against Hospital.

## IV. ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

21. On or about July 29, 2002, plaintiff was hired by Hospital as a Mental Health Worker for an Inpatient Psychiatric Unit.

22. As a Mental Health Worker, plaintiff's employment responsibilities included, *inter alia*: observing, reporting and documenting patient behavior and data; developing the patient environment; helping to ensure a risk-free environment for patients; identifying unit and/or patient care problems and participating in problem solving approaches; and ensuring that all patients, visitors and guests and co-workers were treated with "receptiveness."

23. Upon beginning his employment with Hospital, plaintiff was thrust into, and had to endure, an atmosphere that was quickly to become a hostile work environment.

24. Plaintiff was relentlessly reprimanded and harassed by Hospital for speaking Spanish to co-workers and patients, despite the fact that speaking Spanish was a "preferred requirement" of plaintiff's employment, and an absolutely necessary skill for effectively performing the functions of his position.

25. In plaintiff's presence, his supervisors frequently used ethnic slurs and engaged in conduct denigrating plaintiff because of his national origin.

26. The foregoing included, without limitation, openly mocking Spanish speaking patients and demeaning plaintiff for speaking Spanish to patients whose knowledge of and ability to converse in English had not yet advanced to the point where they were able to communicate in English, thereby requiring they communicate with plaintiff in Spanish.

27. Plaintiff's supervisors often referred to African-American employees as not "a real brother" or "a real sister" because they spoke with Hispanic employees.

28. Plaintiff's supervisors instructed those African-American employees to "come here and speak to the black folk."

29. The clear message conveyed by that instruction was intended to be and was understood as being, that Hispanic employees, including plaintiff, and by extension, Hispanic patients, were an inferior, sub-class of people undeserving of respect and not entitled to the same treatment enjoyed by similarly situated employees and patients who were African-American but not Hispanic.

30. Prior to plaintiff's complaints about Hospital's discriminatory treatment of Hispanic individuals as alleged herein, plaintiff's performance evaluations consistently stated that plaintiff met or exceeded the standards for his position.

31. Plaintiff, on several occasions, in communications to and with his supervisors, complained about the aforesaid discriminatory treatment in the psychiatric unit, but his complaints were ignored or met with hostility and threats.

32. In or about June 2003, plaintiff complained about Hospital's discriminatory treatment of Hispanic individuals in a report addressed to Hospital's administrators.

33. Plaintiff's report was followed by a meeting in which Hospital's administrators admonished plaintiff for raising any such concerns.

34. Hospital's administrators were then under a non-delegable obligation in good faith to consider the complaints and grievances raised by plaintiff to determine the substance, if any, of those complaints and grievances.

35. Approximately two months subsequent to the June, 2003 report alleged above, Hospital, by its Nursing Director, issued to plaintiff a disciplinary warning, titled "Final Written Warning", a copy of which is annexed hereto as Exhibit B.

36. There had been no prior written warnings or reprimands of any kind issued to plaintiff.

37. The Final Written Warning was, to Hospital's knowledge, unfounded, consisting of willfully false accusations and intentionally untrue malicious indictments, recklessly indifferent of what Hospital knew were plaintiff's activity protected by Title VII.

38. The Final Written Warning was intended by Hospital as retaliation against, and was objectively viewed by plaintiff as, Hospital's attempt to coerce him into ceasing his speaking out, ceasing his complaining about and pushing for an end to Hospital's overt, unlawful aforesaid Title VII discrimination.

39. On or about August 30, 2003, plaintiff responded to the allegations in the "Final Written Warning" with two (2) written statements, copies of which are annexed hereto as Exhibits C and D.

40. Hospital took no ameliorative action in response to plaintiff's aforesaid written statements.

41. In further retaliation for his complaining about Hospital's discriminatory treatment of Hispanic employees, Hospital, over plaintiff's objections, persisted in consistently singling plaintiff out to perform tasks Hospital knew would pose unnecessary risks to maintaining his job, trusting that an event would occur allowing Hospital to relieve plaintiff of his responsibilities, transfer him, terminate his employment

or otherwise neutralize plaintiff to prevent him from continuing to advocate changes Hospital knew were required by Title VII.

42. By way of illustrating the allegations in the preceding paragraph, plaintiff's Nurse Supervisor required him, despite his protestations, to escort female patients to the x-ray department and perform "Maximum Observations" of female patients, unaccompanied by (or instead of) any of Hospital's female employees.

43. Such assignments, made over plaintiff's objections, needlessly exposed him, and were intended by Hospital thus to expose him, to false claims of sexual assault and harassment, which, as noted above, would have provided Hospital a pretext upon which Hospital would rely in terminating plaintiff's employment or relocating him.

44. These kinds of false claims were not uncommon at the Hospital, considering the unfortunate mental and emotional instability of its patients.

45. In or about May 2004, faced with Hospital's unabated, discriminatory treatment of Hispanic employees, plaintiff again complained in a report addressed to Hospital's administrators, a copy of which is annexed hereto as Exhibit E.

46. No action was taken by Hospital in any manner to deal with the Title VII issues alleged in the May, 2004 report.

47. In or about May, 2004, plaintiff's Nurse Supervisor stated to several of plaintiff's co-workers that "Mr. Perez [plaintiff] reported you all to higher administration to get you in trouble."

48. Upon information and belief, the Nurse Supervisor made such statement successfully intending, on behalf of Hospital, to humiliate plaintiff and cause him to be ostracized on and off the job by his co-workers.

7

49. At no time did plaintiff report any of his co-workers to "higher administration."

50. At the time the Nurse Supervisor made such statement, she knew it was false.

51. At the time the Nurse Supervisor made such statement she was acting within the scope of her assigned duties, performing functions within the time and space limits accorded her by Hospital and was actuated to make such statement at least in part by a purpose to serve her employer, namely, Hospital.

52. The knowingly false and malicious statement made by the Nurse Supervisor on behalf of Hospital was malicious and in reckless disregard of what Hospital knew were plaintiff's federally protected rights.

53. Hospital's discriminatory treatment of plaintiff and other Hispanic employees continued, including, but not limited to, a reprimand to plaintiff.

54. On or about May 17, 2004, Hospital reprimanded plaintiff for speaking Spanish to a monolingual Spanish speaking patient.

55. There followed a formal "Problem Report" filed by plaintiff's supervisor regarding the incident.

56. The aforesaid (on or about) May 17, 2004, reprimand and Problem Report were further examples of Hospital's ongoing, malicious, unlawful, efforts to retaliate against plaintiff by stifling plaintiff's exercise of Title VII rights known by Hospital to guaranty to plaintiff the right to engage in such protected activity.

57. The May 17, 2004 reprimand and Problem Report, in addition to the other examples of Hospital's unlawful discrimination and retaliation alleged in this Third

Amended Complaint, were further examples of Hospital's malicious, reckless indifference to what Hospital knew were plaintiff's federally protected rights.

58. On or about May 19, 2004, Hospital denied plaintiff's request for a day off for his birthday, a request plaintiff had submitted two (2) weeks earlier.

59. Upon information and belief, Hospital made the aforesaid denial for the express purpose of telegraphing to plaintiff that his refusal to cease his complaints and grievances pertaining to Title VII abuses would result in his being singled out for adverse treatment which, viewed jointly or severally, would make his employment a miserable, impossibly negative experience within which neither plaintiff nor any reasonable person could reasonably be expected to continue employment.

60. Hospital's denial of plaintiff's request was a retaliatory, maliciously made assault upon, and in reckless disregard of what Hospital knew were, plaintiff's federally protected rights.

61. Hospital's denial was in retaliation for plaintiff continuing to complain about Hospital's unlawful Title VII discrimination alleged in this Complaint.

62. On or about May 24, 2004, Hospital issued a "Last Final Warning" against plaintiff, a copy of which is annexed hereto as Exhibit F.

63. The May 24, 2004 Last Final Warning was in retaliation for plaintiff's refusal to cease complaining to Hospital about its Title VII unlawful discrimination, was malicious and recklessly indifferent to what Hospital knew were his federally protected rights.

64. Specifically, the May 24, 2004 Last Final Warning was in retaliation for plaintiff's complaints to Hospital made early in that same month.

9

65. On or about July 8, 2004, plaintiff was suspended from work for three (3) days without pay, based on an allegation of insubordination by plaintiff's supervisor.

66. The suspension was an adverse employment action.

67. The aforesaid suspension was in retaliation for plaintiff's refusal to abandon what Hospital knew was his federally protected activity consisting in complaining to Hospital about its Title VII interdicted discrimination against him and against other Hispanic employees.

68. The aforesaid suspension without pay was another example of Hospital's ongoing malicious, bad faith, reckless indifference to plaintiff's federally protected rights.

69. On or about July 8, 2004, plaintiff complained in writing to Pardes, the President and CEO of Hospital, regarding the harassment and retaliatory actions taken against plaintiff by his supervisors.

70. Pardes never responded to plaintiff's letter.

71. On or about November 17, 2004, plaintiff overheard Hospital's Unit Secretary and Unit Chief Assistant refer to him as a "whistleblower" to whom should be given the "cold shoulder."

72. On or about November 24, 2004, plaintiff's Nurse Supervisor stated that "Luis [plaintiff] may even go to the room and plant things just to make us look bad." This, after plaintiff had dutifully reported a security concern in a patient's room.

73. On or about February 22, 2005, Hospital terminated plaintiff's employment.

74. The termination of plaintiff's employment was the ultimate adverse employment, retaliatory act affirmatively taken by Hospital, intentionally, maliciously,

pretextually and in reckless disregard for what Hospital knew were plaintiff's federally protected rights under the Title VII umbrella.

## FIRST CAUSE OF ACTION
### (Discrimination Based Upon Race in Violation of Title VII)

75. Plaintiff realleges all prior allegations.

76. Hospital violated Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-2(m) by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which race was the motivating, if not the only, factor.

77. As a result of the foregoing, plaintiff has incurred substantial damages measured by (a) the lost wages and benefits he would have obtained from his position at Hospital and (b) the mental anguish, emotional distress and loss of enjoyment of life he suffered.

78. Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

## SECOND CAUSE OF ACTION
### (Discrimination Based Upon National Origin in Violation of Title VII)

79. Plaintiff realleges all prior allegations.

80. Hospital violated Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-2(m) by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which national origin was a motivating, if not the only, factor.

81. As a result of the foregoing, plaintiff has incurred substantial damages measured by (a) the lost wages and benefits he would have obtained from his position

at the Hospital and (b) the mental anguish, emotional distress and loss of enjoyment of life he suffered.

82. Plaintiff continues to suffer and incur additional damages by reason of the foregoing.

### THIRD CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII)

83. Plaintiff realleges all prior allegations.

84. Hospital created a hostile work environment in that, in violation of Title VII, it engaged in, perpetuated and permitted its decision makers to engage in unlawful, discriminatory harassing behavior against plaintiff, with complete knowledge of such unlawful behavior.

85. As a result of Hospital's failure to alleviate or remedy the harassing conduct and discriminatory behavior plaintiff has lost and will lose wages and benefits he would have obtained from said position; and has suffered, and will continue to suffer mental anguish, emotional distress and loss of enjoyment of life.

### FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

86. Plaintiff realleges all prior allegations.

87. Hospital's engaging in the foregoing acts of retaliation against plaintiff has caused him to suffer loss of pay and benefits and emotional distress.

**WHEREFORE**, plaintiff demands judgment on all causes of action in his favor against defendant as follows:

(A) Compensatory damages in the aggregate sum of not less than Two Million ($2,000,000.00) Dollars; and

(B)   Reasonable attorneys' fees. costs and disbursements associated with the commencement and prosecution of this action; and

(C)   Punitive damages; and

(D)   Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
September 26, 2007

                        BALLON STOLL BADER & NADLER, P.C.

By: _____
Marshall B. Bellovin (5508)
*Attorneys for Plaintiff*
1450 Broadway, 14th Floor
New York, New York 10018
(212) 575-7900

To:   James Stuart Frank, Esq.
Epstein Becker & Green, P.C.
*Attorneys for Defendant*
250 Park Avenue
New York, New York 10177
212-351-4500

O:\BELLOVIN\PEREZ, LUIS ANGEL\Third Amended Complaint 9 26 07.doc